Nos. 14-1240; 14-1304

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

THE LOAN SYNDICATIONS AND TRADING ASSOCIATION,

*Petitioner*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION;
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

*Respondents.*

On Petition for Review of a Final Order of the U.S. Securities and Exchange
Commission and the Board of Governors of the Federal Reserve System

**RESPONSE TO ORDER TO SHOW CAUSE**

*Of Counsel:*                          Richard Klingler
Elliot Ganz                            Peter D. Keisler
The Loan Syndications and              Jennifer J. Clark
Trading Association                    Sidley Austin LLP
366 Madison Ave., 15th Floor           1501 K St., NW
New York, NY 10017                     Washington, DC 20005
                                       (202) 736-8000
                                       rklingler@sidley.com

*Counsel for Petitioner The Loan Syndications and Trading Association*

January 22, 2016

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.     This Court has jurisdiction under 12 U.S.C. § 1848. ......................................2

II.    This Court has jurisdiction under 15 U.S.C. § 77i. .......................................9

III.   This Court has jurisdiction under 15 U.S.C. § 78y. .....................................11

IV.   If this Court nonetheless determines that it lacks jurisdiction, it should transfer the cases to the district court pursuant to 28 U.S.C. § 1631 rather than dismiss them. ........................................................................................12

CONCLUSION .....................................................................................................14

# INTRODUCTION

Petitioner the Loan Syndications and Trading Association (LSTA) hereby responds to this Court's order to show cause "why these cases should not be dismissed or transferred to the district court."  Order, Jan. 15, 2016 (citing *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126 (D.C. Cir. 2015); *Am. Petroleum Inst. v. SEC*, 714 F.2d 1329 (D.C. Cir. 2013); 15 U.S.C. § 78y(b), (d)(1); 28 U.S.C. § 1631).

In promulgating the joint rule at issue in this case, respondents the Securities and Exchange Commission (Commission) and the Board of Governors of the Federal Reserve System (Board) each separately invoked one or more statutory provisions—separate from and in addition to 15 U.S.C. § 78o-11 (Section 941 of the Dodd Frank Act)—that provide authority for the challenged credit risk retention rule and expressly establish jurisdiction in this Court under 12 U.S.C. § 1848, 15 U.S.C. § 77i, and 15 U.S.C. § 78y.  This Court's decisions confirm that where separate sources of authority could support a challenge to a rule in district court or this Court, review in this Court is appropriate, and that ambiguity regarding the relationship between the separate jurisdictional provisions should be resolved in favor of retaining jurisdiction in this Court—at least where, as here, a challenge calls only for review on the administrative record.  *See infra* pp. 2–3, 7–8, 10.  Following that approach and finding that this Court has jurisdiction under

any of the authorities cited by either respondent is particularly appropriate here because prompt and direct review would foster the interests in judicial and market efficiency that Congress sought to advance.

## ARGUMENT

### I.    This Court has jurisdiction under 12 U.S.C. § 1848

a. At the conclusion of the document whereby the responsible agencies set out their newly promulgated joint rule, each agency separately indicated the statutory authorities supporting its issuance of the rule.  JA2329–30.  The Board claimed authority for issuing the rule under multiple provisions, including, appropriately, the Bank Holding Company Act (12 U.S.C. § 1841 et seq.).  JA2329. That Act "vests broad regulatory authority in the Board over bank holding companies 'to … prevent possible abuses related to the control of commercial credit.'"  *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp*., 474 U.S. 361, 365 (1986) (quoting S. Rep. No. 91-1084, p. 24 (1970)), and authorizes the Board to promulgate "such regulations and orders … as may be necessary to enable it to administer and carry out the purposes of this chapter and prevent evasions thereof."  12 U.S.C. § 1844(b).

Section 9 of the Bank Holding Company Act, codified at 12 U.S.C. § 1848, establishes judicial review in the courts of appeals over such Board actions.  *See Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481–82 (D.C. Cir. 1994) (an

agency's "explicit reliance" on two sources of authority, one of which provides for court of appeals' review, confers jurisdiction over the petition on the D.C. Circuit). Specifically, "[a]ny party aggrieved by an order of the Board under this Act may obtain a review of such order in [this Court]" by timely filing a petition for review.[1] 12 U.S.C. §1848.

An "order" for purposes of section 9 extends to rules such as the credit risk retention rule. Section 9 authorizes court of appeals review of "any agency action capable of review on the basis of the administrative record," which includes rules like the rule at issue here. *Inv. Co. Inst. v. Bd. of Governors of Fed. Reserve Sys.*, 551 F.2d 1270, 1278 (D.C. Cir. 1977); *see also N.Y. Republican State Comm.,* 799 F.3d at 1131 (the "*Investment Company* presumption [that 'orders' includes 'rules'] is now a tenet of administrative practice and is hornbook administrative law").

For these purposes, the challenged rule is an order "of the Board." This is so because the Board's approval was necessary to its issuance, the Board formally approved all aspects of the rule, all the provisions of the rule are set out in the portion of the Code of Federal Regulations ("CFR") administered by the Board, *see* JA2329, and the Board will continue to work jointly with the agencies to

---

[1] Petitioner timely filed its petition in conformity with this provision. *See* Pet. Br. 3.

interpret and apply the rule.  JA2168, 2173, 2329.  Moreover, the Board's

independent authority, separate from § 78*o*-11, supported its issuance of the

provisions challenged in this case.  *See infra* pp. 6–7.

In addition, the LSTA is a "party aggrieved by an order of the Board" for

purposes of § 1848.  The challenged provisions of the rule directly regulate and

adversely affect LSTA's members, which include managers of open market CLOs

and banks that are subject to the "lead arranger" provisions as well as participate

extensively in CLO securitizations.  *See* Pet. Br. 26 (collecting record citations).

For example, LSTA's members include banks that arrange and structure open

market CLOs, serve as warehouse lenders to CLOs, sell the loans that are

purchased by CLOs, and undertake the loan originations that are a specific target

of the rule.  *See, e.g*., Pet. Br. 26; *Id.* 22–23 (describing comments and

Commission focus on changing practices of, and markets available to, loan

originators); JA2169 (bank origination practices at issue).  And, those banks and

CLO managers will be subject to the Board's ongoing administration of the entire

rule, jointly with other agencies, as it applies and interprets the rule with respect to

all market participants.  JA2168, 2173, 2329.

b.    Nothing in 15 U.S.C. § 78y(d)(1) eliminates the authority provided

by, or deprives this Court of jurisdiction under, 12 U.S.C. § 1848.  Section

78y(d)(1) provides that "for purposes of the preceding subsections of [15 U.S.C. §

78y]," the term "Commission" encompasses multiple agencies including the

Board.[2]

Initially, those "preceding subsections" specify adjudicatory orders of the

Commission, *see* 15 U.S.C. § 78y(a), and particular rules that affirmatively give

rise to jurisdiction in this Court, *see id.* § 78y(b), and do not mention rules

promulgated under statutory provisions not listed in § 78y, such as § 78*o*-11, which

was one of the several statutory authorities invoked by the Board for issuing the

credit risk retention rule. JA2329. That is, the "preceding subsections" in § 78y

do not directly address or authorize judicial review of rules such as those

authorized by § 78*o*-11, nor do they affirmatively direct that a challenge to any

such rule be reviewed initially in the district court. If there were no alternative

basis for jurisdiction in this Court, there would nonetheless be jurisdiction in the

district court under the APA based on a default rule that district court review is

appropriate absent a basis for review in this Court. *See Am. Petroleum Inst.*, 714

F.3d at 1333. But where there is an alternative basis for review in this Court, the

default rule does not apply, and the mere existence of that default rule does not

amount to the necessary "firm indication of a[n] intention" to preclude jurisdiction

---

[2] Section 78y(d)(1) provides that "[f]or purposes of the preceding subsections of
this section, the term 'Commission' includes the agencies enumerated in section
78c(a)(34) of this title insofar as such agencies are acting pursuant to this chapter."
15 U.S.C. 78y(d)(1). Section 78c(a)(34), in turn, lists multiple agencies including
the Board in certain circumstances. 15 U.S.C. § 78c(a)(34).

in this Court over cases calling for review based on the administrative record.  *See*

*N.Y. Republican State Comm.*, 799 F.3d at 1133.

Even if some negative implication directing district court review could

nevertheless be inferred from § 78y(d)(1), that provision applies only "insofar as

such agencies are acting pursuant to this chapter [the Exchange Act]."  15 U.S.C.

§78y(d)(1).  It does not imply anything about district court review of Board action

insofar as the Board, as here, is also acting pursuant to a source of authority quite

distinct from the Exchange Act (and establishing jurisdiction in this Court).  That

separate authority in the Bank Holding Company Act, *supra* 2, supported the

Board's issuance of the entire rule (as well as its ongoing joint enforcement of the

rule), making a challenge to any of its provisions subject to review in this Court.

*See Int'l Bhd.*, 17 F.3d at 1482.

Even if the Board's independent authority arising from the Bank Holding

Company Act were required to extend to the particular provisions challenged here

(contrary to *International Brotherhood*), that requirement, too, would be satisfied.

The Board's separate authority invoked here includes authority over banks, and the

credit risk retention rule provisions challenged in this case apply to or affect any

bank holding company that participates in the structuring of any securitization,

sells loans used in securitizations, sells securities in the securitization, or acts as a

manager of a securitization.  *See* JA2176 (bank holding companies are among the

"sponsors of securitization transactions within the scope of the rule"); JA2307–08 (order provisions); JA1436.  Indeed, the various provisions of the challenged rule, and the failure to adjust the rule or provide an exemption, were enacted and justified by the regulators as designed especially to affect bank origination practices.  *See* JA2169, 2215–16, 2221.  And, as noted, these aspects of the rule directly affect banks, including LSTA member banks, both initially and through ongoing joint interpretation and administration of the credit risk retention provisions.  *See supra* pp. 4–5.

Moreover, any ambiguity regarding the scope of § 78(d)(1)'s "insofar as" clause should be interpreted to give effect to rather than wholly displace section 9 of the Bank Holding Company Act.  "[A]bsent a 'firm indication' of a contrary intention, when a direct review provision's applicability to an agency action is 'ambiguous,'" this Court "presume[s] that Congress intended to locate jurisdiction in the courts of appeals." *N.Y. Republican State Comm.*, 799 F.3d at 1133 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744–45 (1985)); *see also Int'l Bhd.*, 17 F.3d at 1481–82.

Giving effect to Section 9 in these circumstances would, in addition to respecting Section 9's plain language, advance the interests that Congress sought to achieve through the section. By enacting section 9, Congress plainly intended to provide expedited review in the courts of appeals for persons adversely affected by

a Board decision and create an efficient review process that would eliminate market uncertainty.  Expedited, direct review in this Court is particularly appropriate where, as here, the challenge is to a "rulemaking[], in which there is no need for judicial development of an evidentiary record, [and] there is no gain from vesting jurisdiction in district courts." *N.Y. State Republican Comm*., 799 F.3d at 1131; *id.* ("Direct review in the court of appeals has the advantage of both eliminating the 'unnecessary delay and expense' attending litigation in two courts and abolishing the 'undesirable bifurcation of the reviewing function between the district courts [for rules] and the courts of appeals [for orders].'").  Initial review in the district court would be doubly pointless here, where the district court proceedings would inevitably be followed by another round of briefing and review in this Court.

The expedited review provided by Section 9 and the Court's assumption of jurisdiction here is especially important in this case.  Compliance with the credit risk retention rule is required as of December 24, 2016.  The agencies acknowledged that the rule will diminish the formation of CLOs, *see* JA2222, 2294–95, and that adverse effect is already occurring as market participants seek to initiate only those securitizations that can later be modified after the compliance date and as they anticipate the rule's potential application more generally. Uncertainties surrounding the rule will be eliminated only through this Court's

8

review, sooner or later, and considerations of both market and judicial efficiency favor giving effect to Section 9 and resolving that uncertainty now.[3]

## II.    This Court has jurisdiction under 15 U.S.C. § 77i

This Court also has jurisdiction under the judicial review provision of the Securities Act of 1933, which provides that "[a]ny person aggrieved by an order of the Commission may obtain a review of such order" in the courts of appeals.  15 U.S.C. § 77i.  In issuing the credit risk retention rule, the SEC relied on its authority under the Securities Act of 1933 as well as its authority under the Exchange Act.  JA2331 (citing 15 U.S.C. §§ 77g, 77j, 77s, 77z–3).  The Securities Act provides the Commission with broad authority to adopt regulations requiring the disclosure of information regarding securities, including specifically the asset-backed securities at issue in the joint rule's provisions concerning information permitting investors to confirm that the securitization sponsor has retained risk appropriately.  *See* 15 U.S.C § 77g(c) (requirements related to asset-backed security); JA2182–83, 2307 (information requirements); *see also* 15 U.S.C. §§ 77j(c); 77s(a) (authority to issue rules implementing the Securities Act); *id.* 77z-3 (broad exemption authority).

---

[3]  If this Court concludes that it has jurisdiction over only challenges to Board action, that would be sufficient to proceed:  Petitioner's challenge is to portions of the rule issued by the Board, and the Court could provide all relief requested by Petitioner.  The petition could have initially been directed against the Board alone.

Section 77i authorizes judicial review of "orders," and it is "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *N.Y. Republican State Comm.*, 799 F.3d at 1129.  No such countervailing indicia exist with respect to the Securities Act of 1933.  Unlike the judicial review provision of the Exchange Act (15 U.S.C. § 78y), § 77i provides for direct appellate review of "orders" without distinguishing between orders and rules for purposes of review.[4]  *See N.Y. Republican State Comm.*, 799 F.3d 1126, 1132 (D.C. Cir. 2015) ("order" to be read "broadly" "unless a statute has separate review provisions for 'rules' and 'orders.'") (citing *Investment Company*, 551 F.2d at 1278).

Because the Commission relied on the Securities Act as well as the Exchange Act as authority for the rule, the Securities Act authorization of direct review in the court of appeals is itself sufficient to confer jurisdiction on this Court. *See Int'l Bhd.*, 17 F.3d at 1481–82 (court of appeals has jurisdiction over challenge to agency rule where the agency purported to rely on two sources of statutory authority, one of which provides for review in the district court and the other for review in the court of appeals).

---

[4] No issue of alternative authority arising under the Securities Act was presented in *American Petroleum Institute*, *supra*.

### III.  This Court has jurisdiction under 15 U.S.C. § 78y

Subsection § 78y(b)(1) authorizes a "person adversely affected by a rule of

the Commission promulgated pursuant to section … 78o(c)(5) or (6) …" to "obtain

review of this rule in [this Court]."  That provision confers jurisdiction in this case

because the SEC relied on its authority in 15 U.S.C. § 78o in promulgating the

credit risk retention rule.  JA2331.  Although the SEC did not specify any

particular subsection of § 78o, the credit risk retention rule directly implicates

subsections (c)(5) and (c)(6), which authorize the SEC to issue rules relating to

certain transactions of broker/dealers on a variety of grounds including "as

necessary or appropriate in the public interest and for the protection of investors

…": 15 U.S.C. §§ 78o(c)(5), (c)(6).

Broker/dealers undertake the core activities most directly addressed by the

credit risk retention rule at issue.  As components of banks, they originate the loans

sold to securitizations including CLOs, and altering the underwriting standards

applied in those loan originations is the central rationale for the Commission's risk

retention rule, including especially its rejection of adjustments applying to open

market CLOs.  *See* JA2169, 2215–16, 2221.  Broker/dealers sell the loans to CLOs

and may separately be centrally involved in structuring securitizations, from

designing and implementing certain securitizations to selling ABS securities to

investors.  The risk retention rule, in turn, is designed to alter how these and other

11

securitizations are designed, JA2169–70, what information is provided by

broker/dealers to potential investors about the risk retained by sponsors, JA2182–

83, 2307, and which securitizations are to be curtailed or encouraged, *see, e.g*.,

JA2169–70, 2172–73, 2221.  Indeed, the agencies in promulgating the joint rule

specifically contemplated that broker/dealers can act as "sponsors" subject to and

directly regulated by the risk retention rule.  JA2176.  Because § 78o(c)(5) and

(c)(6) gives the SEC authority to issue rules regulating broker-dealer transactions,

and the SEC relied on its authority under § 78o to promulgate the credit risk

retention rule, § 78y(b)(1) gives this Court jurisdiction over petitioner's challenge

to the rule.  *See Int'l Bhd.*, 17 F.3d at 1482.

## IV.    If this Court nonetheless determines that it lacks jurisdiction, it should transfer the cases to the district court pursuant to 28 U.S.C. § 1631 rather than dismiss them.

For the reasons presented above, this Court has jurisdiction over this

petition.  If, however, this Court were to determine that it wholly lacks jurisdiction,

the appropriate resolution would be to transfer these cases to the U.S. District

Court for the District of Columbia pursuant to 28 U.S.C. § 1631, which requires

transfer "if it is in the interest of justice," to any court "in which the action or

appeal could have been brought at the time it was filed."  28 U.S.C. § 1631.

This petition plainly could have been brought in the U.S. District Court for the District of Columbia "at the time it was filed" in this Court,[5] and transfer would also be "in the interest of justice." 28 U.S.C. § 1631. "Transfer is warranted when it 'would aid litigants who were confused about the proper forum for review,'" *Sharon v. United States*, 802 F.2d 1467, 1468 (D.C. Cir. 1986), and transfer is "the fairest and most appropriate course" when petitioners made an "understandable mistake" in "seeking initial review in this court." *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1442 (D.C. Cir. 1988). Petitioner made at most an "understandable mistake" given the statutes at issue and respondents' failure to challenge petitioners' assertion of jurisdiction, and by timely filing a petition with this Court, petitioner followed this Court's "precise instructions about what to do" in the event of any uncertainty "about where and when to file." *N.Y. Republican State Comm.*, 799 F.3d at 1129–30.

In addition, because this case has been fully briefed in this Court, dismissal would increase the very considerable delay that would be associated with even a transfer. *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("Normally transfer will be in the interest of justice because normally dismissal of an action

---

[5] *See* 28 U.S.C. § 2401(a) (six-year statute of limitations); *Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004) (28 U.S.C. § 2401(a) presumptively applies to APA actions); 28 U.S.C. § 1391(e) (authorizing suits against the government in any district where a defendant resides or the events at issue occurred).

that could be brought elsewhere is 'time-consuming and justice-defeating.'"); *see also Barnes v. Whelan*, 689 F.2d 193, 206 (D.C. Cir. 1982) (additional delay and expense are "certainly strong reasons" in deciding whether a transfer is in the interest of justice). Such increased delay would be particularly harmful because CLO managers are required to comply with the rule "beginning December 24, 2016," JA2167. *See supra* pp. 8–9. [6]

## CONCLUSION

For the foregoing reasons, this Court should find that it has jurisdiction over these cases.

Dated: January 22, 2016                    Respectfully submitted,

                                           /s/ Richard Klingler
*Of Counsel:*                              Richard Klingler
Elliot Ganz                                Peter D. Keisler
The Loan Syndications and                  Jennifer J. Clark
Trading Association                        Sidley Austin LLP
366 Madison Ave., 15th Floor               1501 K St., NW
New York, NY 10017                         Washington, DC 20005
                                           (202) 736-8000
                                           rklingler@sidley.com

*Counsel for Petitioner The Loan Syndications and Trading Association*

---

[6] In *National Association of Manufacturers v. S.E.C.*, this Court transferred the fully-briefed case to the district court, which treated the appellate briefs as cross-motions for summary judgment and expedited its consideration. 956 F. Supp. 2d 43, 53 (D.D.C. 2013). Likewise here, transfer would allow the case to "proceed as if it had been filed in" the district court, 28 U.S.C. § 1631, and promote prompt resolution of petitioner's challenge.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22 day of January, 2016, I electronically filed the foregoing Response to the Order to Show Cause with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.  I also certify that I will cause the appropriate number of copies to be hand delivered to the Court.

/s/ Jennifer J. Clark
Jennifer J. Clark